## City of Vanceburg et al. v. Plummer et al.

(Decided Dec. 6, 1938.)

714

ROY WILHOIT, CHARLES H. REIDINGER and W. C. DUGAN for appellants.

LOUIS L. COX and JOUETT & METCALF for appellees Community Public Service and others.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The question presented is whether a municipal cor-

poration is required to obtain from the Public Service Commission of Kentucky a certificate of public convenience and necessity prior to the construction of a light, heat and power plant.

Vanceburg, a city of the fifth class, has a population of 1,375, according to the last census. The appellee Community Public Service Company is now furnishing electric light, heat and power to the city of Vanceburg and its inhabitants under a franchise which has seven years to run. In September, 1937, the board of council of Vanceburg adopted an ordinance declaring it desirable and necessary that the city should construct or acquire an electric light and power production and distribution system, and providing for the submission to the qualified voters of the city of the question whether the city of Vanceburg should construct and operate such system and should sell its 5 per cent. revenue bonds in the sum of $148,000 for the purpose of paying the cost of construction or acquisition thereof. At the election held November 2, 1937, the following question was submitted to the voters:

"Are you in favor of purchasing, constructing and operating a municipal light, heat and power plant in accordance with the plans and specifications adopted by the City of Vanceburg, Kentucky, and the incurring of indebtedness by the issuance of revenue bonds in the amount of one hundred and forty-eight thousand dollars?"

and 175 votes were cast in favor of the proposition and 141 votes against it. In April, 1938, the board of council of the city of Vanceburg adopted an ordinance providing for the issuance and sale of $148,000 of revenue bonds by the city for the purpose of providing funds with which to construct a municipal light, heat, and power plant and distribution system. William B. Plummer, a citizen and taxpayer of the city, brought this action against the city of Vanceburg and the members of its board of council to enjoin them from issuing or selling bonds and from constructing the light, heat, and power plant without first obtaining from the Public Service Commission of Kentucky a certificate that public convenience and necessity required the construction of such plant. Upon submission of the case upon the pleadings and proof the trial court adjudged that the city could not issue bonds to construct the plant until it

had obtained from the Public Service Commission a certificate showing that it was necessary that it should construct, own, and operate such a plant. To reverse that judgment, the city prosecutes this appeal.

The trial court also adjudged that the election held November 2, 1937, did not authorize the city to issue bonds for the purpose of erecting a light, heat and power plant for the reason that the requirements of section 3480d-1 of the Kentucky Statutes had not been complied with, in that among other things the necessary and proper plans and specifications were not prepared or set forth as required by said section, nor was any location for the plant selected or fixed, nor was the size, type, and method of the construction determined, nor was any survey made of the lands or rights of way to be taken, nor the necessary estimates of the probable cost of the acquisition of such necessary lands, rights of way, and easements given, nor were any plans or specifications of any kind made or submitted to the board of council for a necessary and indispensable distribution system. However, we are not concerned with that question, since no appeal was taken from that part of the judgment.

Section 4(l) of chapter 145 of the Acts of the General Assembly of 1934, now section 3952-25, Carroll's Kentucky Statutes, 1936 Edition, reads in part:

"No utility, person or corporation shall begin the construction, of any plant, equipment, property or facility for furnishing to the public any of the services enumerated in Section 1 of this act, except ordinary extensions of existing systems in the usual course of business, unless and until it shall have obtained from the commission a certificate that public convenience and necessity require such construction. Upon the filing of any application for such a certificate, and after a public hearing of all parties interested, the commission may, in its discretion, issue or refuse to issue, or issue in part and refuse in part, such a certificate of convenience and necessity."

Section 1 of chapter 145 of the Acts of 1934 defined the term "corporation" as follows:

"The term 'corporation,' when used in this act, includes private, quasi public and public cor-

porations, an association, a joint stock association, or a business trust.''

In the same section, the term ''utility'' was defined as follows:

''The term 'utility' or 'utilities,' when used in this act, shall mean and include persons and corporations or their lessees, trustees or receivers that now or may hereafter own, control, operate or manage (1) any facility used or to be used for or in connection with the generation, production, transmission or distribution of electricity to or for the public for compensation for lights, heat, power or other uses.''

Chapter 145 of the Acts of 1934 was a comprehensive act providing for the regulation and control of public utilities within the commonwealth, and creating a Public Service Commission to administer it. Undoubtedly, the act appled equally to privately and publicly owned utilities. In 1936 subsections (c), section 1, chapter 145 of the Acts of 1934, which defined the term ''utility'' or ''utilities,'' was amended by adding thereto the following:

''Provided, however, that for the purposes of this act the term 'utility' or 'utilities' shall not mean or include any city or town or water districts established in pursuance of Chapter one hundred thirty-nine (139), Acts one thousand nine hundred twenty-six (1926), and amendments thereto, owning, controlling, operating or managing any facility or facilities enumerated in this paragraph.'' Chapter 92, Acts of 1936, Section 3952-1, Carroll's Kentucky Statutes, 1936 Edition.

It is appellants' contention that it was the Legislature's intention, by the amendment to the 1934 Act, to remove entirely all municipalities from the operation of the Public Service Commission Act, and that cities no longer are required to obtain from the Public Service Commission of Kentucky the certificate of public convenience and necessity provided for in section 4(l) of the act, before constructing an electric light, heat and power plant. On the other hand, it is appellee's contention that the Legislature intended to and did exempt only those municipal corporations which are actually ''owning, controlling, operating or managing a utility system,'' and intended to and did retain to its agent, the

Public Service Commission, complete jurisdiction over the proposed construction of a utility system by a municipal corporation, and that such jurisdiction of the commission is divested only when the system is placed into operation by the city, at which time the supervisory and regulatory powers reposed in a city utility commission by the statutes come into play. The question presented is purely one of statutory construction. In construing a statute, the primary rule is to ascertain and give effect to the intention of the Legislature, Barr v. Dorman, 249 Ky. 367, 60 S. W. (2d) 939; Taylor v. Fidelity & Casualty Company of New York, 246 Ky. 598, 55 S. W. (2d) 410; Commonwealth v. International Harvester Company, 131 Ky. 551, 115 S. W. 703, 133 Am. St. Rep. 256, and such intention must primarily be determined from the language of the statute itself. City of Covington v. State Tax Commission, 257 Ky. 84, 77 S. W. (2d) 386; Clay v. Board of Regents, 255 Ky. 846, 75 S. W. (2d) 550; Lewis v. Creasey Corporation, 198 Ky. 409, 248 S. W. 1046. Where two statutes seemingly conflict, courts must harmonize them and give them such construction as will give effect to each if possible. General Motors Acceptance Corporation v. Shuey, 243 Ky. 74, 47 S. W. (2d) 968; Tubbs v. Commonwealth, 248 Ky. 24, 58 S. W. (2d) 236; Lewis v. Mosely, 215 Ky. 573, 286 S. W. 793. The same rule applies where there are apparent inconsistencies in the act itself. Sutton v. Rose, 224 Ky. 156, 5 S. W. (2d) 892; Commonwealth v. Vanmeter, 187 Ky. 807, 221 S. W. 211. In Louisville Railway Company v. Dugan, 179 Ky. 825, 201 S. W. 324, it was said [page 325]:

"An often invoked rule of construction, where two acts or sections of the statutes appear to conflict, requires that each section or act shall be given that meaning which will most completely effectuate the legislative intention without running counter to the other, thus harmonizing and bringing the two into a consistent whole."

At its 1932 session, the General Assembly passed an act enabling cities of the third class to acquire, construct, operate and maintain electric light, heat and power plants, and to issue revenue bonds to pay the cost thereof, payable solely from the revenues of such works. Acts 1932, chapter 119. Section 20 of the act provided for the appointment of a city utility commission by any city acquiring or constructing such a plant. The com-

mission was given absolute control of the plant and its operation and fiscal management, and was empowered to regulate rates. In 1936, chapter 119 of the Acts of 1932 was amended so as to extend its provisions to cities of the second, fourth, fifth and sixth classes. Acts 1936, chapter 77. The title of the amending act purported to amend and re-enact the title and section 1 of the 1932 Act so as to extend the provisions of the act to cities other than those of the third class, but, in the body of the act, a proviso was added requiring a submission to the voters of the city of the matter of purchasing or constructing a municipal light, heat and power plant. This part of the 1936 Act was held to be in violation of section 51 of the Constitution in Booth v. City of Owensboro, 275 Ky. 491, 122 S. W. (2d) 111, decided November 22, 1938. There was an apparent inconsistency between the 1932 Act as amended in 1936 and the Public Service Commission Act of 1934 in that the former vested in a city utility commission the supervision of a municipally owned plant and control of the rates charged by it, and the latter vested such regulatory power in the Public Service Commission. The amendment to the Public Service Commission Act, providing "that for the purposes of this act the term 'utility' or 'utilities' shall not mean or include any city or town * * * owning, controlling, operating or managing any facility or facilities enumerated in this paragraph," was obviously adopted for the purpose of correcting this inconsistency. The two amendatory acts were passed at the same session of the Legislature, and were approved by the Governor on the same day, February 21, 1936.

In amending the Public Service Commission Act, the Legislature left unchanged the definition in section 1 of the term "corporation," as including a public corporation, and also the provision in section 4(l) of the act requiring such public corporation to obtain a certificate of convenience and necessity before beginning the construction of a plant. The amendment to the Public Service Commission Act did not eliminate entirely municipalities from the operation of the act. It only divested the Public Service Commission of supervisory and regulatory power over plants owned and operated by municipalities, and left in effect the requirement that a municipality must obtain from the commission a certificate of convenience and necessity before it can begin the construction of a plant. After a city has obtained a

certificate and constructed a utility plant, it can operate the plant and fix the rates for the utility commodity through its city utility commission free from any supervision or regulation by the State Public Service Commission. The chief purpose of the requirement in the Public Service Commission Act, that a certificate of convenience and necessity be obtained from the Public Service Commission before construction of a utility plant is begun, is to prevent the unnecessary duplication of facilities for utility service and to protect the consuming public from inadequate service and higher rates which frequently result from such duplication. The reason for the requirement applies alike to municipally and privately owned utilities. The Legislature recognized the public evil which results from unlimited competition in the public utility field, and placed this provision in the act as a safeguard against it, and we find nothing in the amendment to the 1934 Act which indicates that the Legislature intended to remove that safeguard so far as municipally owned utilities are concerned. Our construction of the act not only makes all of its sections harmonious, but also reconciles all apparent inconsistencies between the two amendatory acts passed at the 1936 session of the Legislature.

Appellants cite an entry in the 1936 Journal of the House of Representatives, and insist that it shows the Legislature intended to exempt municipalities completely from the operation of the Public Service Commission Act when that act was amended in 1936. The proposed amendment to the Public Service Commission Act was House Bill 3. The following appears in the House Journal:

"Mr. Myers offered the following amendment to said bill, viz.:

"Amend H. B. 3 by adding after the word 'cities' the words 'provided such cities secure a certificate of public convenience and necessity as provided by Chapter 145 of the 1934 Acts of the General Assembly.'

"Said amendment was disagreed to."

It is argued that this shows the Legislature intended that a city should not be required to obtain from the Public Service Commission a certificate of convenience and necessity before beginning the construction of a light, heat and power plant, but that is mere conjec-

ture. The rejection of the amendment is entitled to little weight, since the court can have no means of knowing the reasons that influenced the Legislature in such rejection. It could have felt, and perhaps did feel, that the Act of 1934, as proposed to be amended by House Bill 3, was clear without the additional amendment, and that to add language to make certain that which was already without doubt was wholly unnecessary. Where the language of a statute is doubtful or ambiguous, resort may be had to the journals or to the legislative records showing the legislative history of the act in question in order to ascertain the intention of the Legislature, but this rule does not apply where the language of the statute is plain and unambiguous. Rejection by the Legislature of a proposed amendment to an act is, at most, only a circumstance to be weighed along with others when choice is nicely balanced. Fox v. Standard Oil Company, 294 U. S. 87, 55 S. Ct. 333, 79 L. Ed. 780. The journals of the Legislature may not be resorted to for the purpose of supporting a construction which adds to, or takes from, the significance of the words employed. Duncan v. Combs, 131 Ky. 330, 115 S. W. 222. Annotation in 70 A. L. R. 5. In the 1936 amendment to the Public Service Commission Act, the Legislature retained the words ''public corporations'' in the definitions of section 1 of the act, and also the provisions of the section requiring ''corporations'' defined in the act to include cities, to obtain from the Public Service Commission a certificate of public convenience and necessity before acquiring or constructing a utility plant. A construction of the amendment that would exempt municipalities from these provisions would do violence to the plain language of the act and would not be in accord with the rules of statutory construction heretofore stated.

The circuit court rightly held that the city of Vanceburg may not begin the construction of the proposed utility plant unless and until it shall have obtained from the Public Service Commission of Kentucky a certificate that public convenience and necessity require such construction, and the judgment accordingly is affirmed.

Whole Court sitting, except Justice Cammack.