**CITY OF COLD SPRING, Kentucky,**
**Appellant,**

v.

**CAMPBELL COUNTY, Kentucky, WATER**
**DISTRICT, Appellee.**

Court of Appeals of Kentucky.

Feb. 12, 1960.

Harold A. Luersen, Cincinnati, Ohio, for appellant.

Ralph Rich, William B. O'Neal, Covington, and Squire Ogden, James S. Welch, Ogden, Brown, Robertson & Marshall, Louisville, for amicus curiae.

George Muehlenkamp, Newport, for appellee.

CLAY, Commissioner.

This declaratory judgment action was brought by appellee, Campbell County Water District, for an adjudication that it has the right to provide water service in a certain specified area, and to have it adjudged that appellant, City of Cold Spring, may not serve this area. The Chancellor entered a judgment in accordance with the prayer of the Water District.

The basis for the court's determination was the legal conclusion that the Water District had the *exclusive right* to furnish water within the confines of the district territory.

Three difficult questions are raised on this appeal: (1) whether the court has original jurisdiction to determine the broad legal right or authority of the City generally to serve this area (regardless of which party has the better right under the specific facts shown by this record), (2) if the court has such jurisdiction, whether the Water District has exclusive authority to serve this area, and (3) assuming each to have a statutory right to serve, whether a court may in an original proceeding determine which shall be given a preference.

The City of Cold Spring has owned and operated a water distribution system since 1942. The Water District was organized in 1953, and its territory originally included all the unincorporated territory of Campbell County. Later its boundaries were enlarged to include several incorporated cities. (Not Cold Spring.)

In 1957 the City's water supply became inadequate, and it sought a new source. It rejected an offer made by the Water District.

In April 1957, Cold Spring and the City of Covington filed a joint application before the Public Service Commission seeking permission for Covington to furnish water to Cold Spring. Both cities were granted certificates of public convenience and necessity to construct facilities for transporting the water. Rates were also approved.

In order to obtain the water under the above certificates, it is necessary for Covington to extend its water lines about three-fifths of a mile and for Cold Spring to construct approximately two and a half miles of water line to the point of delivery. The best passageway for these conduits was through the Johns Hill area where there are about forty-three homes which have never been supplied with water by the Water District. Some twenty-six of the home owners had indicated in writing their desire to obtain water from Cold Spring through the new pipe line.

We are not sure of the exact time this proposal to furnish water to Johns Hill began to crystallize, but the Water District did file an intervening petition in the proceedings before the Public Service Commission and specifically asked that the Johns Hill area and other unincorporated areas in Campbell County be defined as the Water District territory. However, the Commission did not rule on this intervening petition.

On April 17, 1958, this action was commenced by the Water District against Cold Spring, which was about four days before the City sold revenue bonds to finance the improvement of its water distribution system. On June 11, 1958, the City began construction of its two and a half miles of water line along and within the right of way of the Johns Hill road. Shortly thereafter the Water District developed a plan for the construction of a large storage tank in the vicinity of Johns Hill, the principal purpose of which was to furnish water to the City of Highland Heights, but would permit it to serve the community here involved.

The City contends the circuit court had no jurisdiction of this proceeding because the determination of the specific preferential right to serve the Johns Hill area is vested in the Public Service Commission under the provisions of KRS 278.020 and 278.040. It is argued that neither party may construct new facilities to furnish this service without a certificate of public convenience and necessity from the Public Service Commission; that such certificate has been granted to the City; and that the Water District has not obtained one. We will assume for the moment that such a certificate is necessary. Since the City's certificate is not broad enough to authorize this proposed operation, neither party has been authorized by the Commission to furnish the service. Consequently, no action of the Commission has settled this controversy.

Before we reach the question of the superior right to serve this area, the issue presented is whether or not the Water District has the *exclusive* right to furnish water within the designated confines of the District. Or to put the question conversely, has the City any authority to serve anywhere within the Water District territory (regardless of whether or not the Water District even intends to or will furnish a requested service)?

This is a question of law pertaining to the general powers of the City and the Water District. It presents a question of the construction of statutes, and does not involve a question of fact which the Commission is pre-eminently qualified to determine. The court has jurisdiction to determine the extent of the authority of either or both the City and the Water District.

Such was decided in City of Olive Hill v. Public Service Commission, 305 Ky. 249, 203 S.W.2d 68, 71. In that case the Public Service Commission, in a proceeding before it, had undertaken to decide that a city was without authority to sell and distribute electrical current beyond the city limits. (Having so determined, it authorized other utilities to furnish the same

service.) This Court held that the "legal right or authority" of a city to supply patrons beyond its corporate limits was a question of law which the Commission could not decide and which a court had jurisdiction to decide. No issue of preferential right as between competing utilities was determined in that case. As a matter of fact, the latter part of the opinion makes it quite clear that the Commission had jurisdiction to determine questions involving unnecessary duplication of plants.

The decision in the Olive Hill case must be limited to a holding that a court, rather than the Commission, has jurisdiction to determine whether or not a municipality (or other entity in the public utility field) has the *general power* to serve a particular area. On the basis of that decision, and in answer to our first question, we must uphold the jurisdiction of the Chancellor in this case to determine whether or not the City of Cold Spring had any authority to serve anywhere within the confines of the established Water District territory.

■ Our next question is whether the City had such authority, or whether the Water District had exclusive rights throughout its territory. The Chancellor decided for the Water District, apparently on the ground that unless the Water District had an exclusive right, cities and perhaps other public utilities, by invading water district territory, might eventually destroy the water district. This overlooks the fact that it is the duty of the Public Service Commission to prevent ruinous competition, and that the Public Service Commission can adequately protect the Water District. Perhaps even more disastrously, this holding completely ignores the need for service of those residents within the Water District territory whom the Water District may be unable, or unwilling, to serve, and whom the Water District has no obligation to serve. (There are substantial unserved areas in the Water District limits.)

■ We are offered no authority whatsoever for the proposition that a water district has the exclusive right to furnish service within its confines. No such authority is given by statute (Chapter 74, KRS). On the other hand, statutory law (KRS 96.150) grants to the City the unrestricted authority to furnish this service within five miles of its city limits (which includes the area here involved). The statute giving the City such right in this area was in effect long before the Water District was created. Surely if the legislature intended a water district to have an exclusive right, it would have so provided

■ Under the statutes relating to cities and water districts, both of the parties to this controversy are given equal and concurrent general authority to serve the Johns Hill area. The Water District contends its constitutional rights will be violated if the City is permitted to invade its territory. This argument is based on an assumed exclusive right within the territory, which we have just pointed out does not exist.

The Water District contends that the question before us was determined in Board of Com'rs of Louisville Extension Water District v. Yunker, Ky., 239 S.W.2d 984. That suit involved the right of the Louisville Water Company to serve a particular new customer outside the city limits in an area where the company had available facilities. The Water District there contended, as here, that it had the exclusive right to furnish water to residents within its territory. The decision effectively denied such claimed exclusive right. It was held the Water Company had a right to serve those consumers which it was in a position to serve and which the District could not serve within the immediate future, thereby recognizing the right of a city to serve a new customer in the water district territory.

■ The Water District maintains this decision is controlling authority for the proposition that *only* under the conditions appearing in that case might a city serve a consumer in water district territory. Certain language in the latter part of the

opinion suggested such a possibility. However, this question was not presented in the case and could not properly have been decided therein. Even if the court had undertaken to decide such question by way of *obiter dictum*, the conclusion reached would have lacked any authoritative impact whatever because, as admitted in one of our later opinions, the court had overlooked the authority granted cities by KRS 96.150 to serve outside their city limits. Louisville Water Co. v. Public Service Commission, Ky., 318 S.W.2d 537.

We therefore reach the conclusion on the second question presented that *both* the City and the Water District have been granted by statute a legal right and authority to furnish service in the Johns Hill area. The Chancellor erred in deciding to the contrary.

■ The foregoing erroneous conclusion led the court to adjudge in substance that the Water District had a preferential right to serve the Johns Hill area, which was in effect the granting of a certificate of convenience and necessity to construct facilities and furnish this particular service. If the judgment may be thus construed, it invades the jurisdiction of the Public Service Commission.

■ KRS 278.020(1) provides as follows:

"(1) No person shall begin the construction of any plant, equipment, property or facility for furnishing to the public any of the services enumerated in KRS 278.010, except ordinary extensions of existing systems in the usual course of business, until such person has obtained from the Public Service Commission a certificate that public convenience and necessity require such construction. Upon the filing of an application for such a certificate, and after a public hearing of all parties interested, the commission may issue or refuse to issue the certificate, or issue it in part and refuse it in part."

While both cities and water districts are by KRS 278.010(2) expressly exempted from the definition of "utilities", this statute uses the word "person", and such public corporations are subject to its provisions. City of Covington, Kentucky v. Public Service Commission of Kentucky, Ky., 327 S.W.2d 954.

■ Clearly in a case such as the one before us, the Commission is pre-eminently qualified to determine which of these two competing political subdivisions is best qualified to, and should serve the Johns Hill area. That is the business of the Commission, and is not a matter for the original jurisdiction of courts. This fundamental principle was recognized in the Olive Hill case (City of Olive Hill v. Public Service Commission, 305 Ky. 249, 203 S.W.2d 68), and in the following cases: City of Vanceburg v. Plummer, 275 Ky. 713, 122 S.W.2d 772; Kentucky Utilities Co. v. Public Service Commission, Ky., 252 S.W.2d 885; Public Service Commission v. Mt. Vernon Tel. Co., Ky., 300 S.W.2d 796; City of Covington, Kentucky v. Public Service Commission of Kentucky, Ky., 327 S.W.2d 954. See also United States v. Western Pacific R. Co., 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126.

We must therefore conclude, in answer to our third question, that the judgment is erroneous to the extent it purports to authorize the Water District to serve the Johns Hill area with new facilities. (The judgment likewise would have been erroneous had it granted such specific right to the City.)

Because the statutes relating to this subject matter are somewhat complex and confusing, and because some of our cases appear to have been misconstrued, we here recapitulate our conclusions in this controversy:

■ (1) Where a controversy concerns the general statutory right or authority of a city, water district or public utility to furnish service within a certain area, the ques-

tion is one of law and must be determined by a court.

(2) The statutes do not grant to water districts exclusive authority to operate in the territory comprising the district, and KRS 96.150 does authorize cities to furnish water service in territory contiguous to the city that lies within five miles of its corporate limits.

(3) Controversies between persons or corporate bodies engaged in a public utility enterprise concerning the right to construct new facilities to serve a particular customer or class of customers (other than ordinary extensions of existing systems in the usual course of business) are within the jurisdiction of the Public Service Commission upon application made under KRS 278.020 for a certificate of public convenience and necessity.

The judgment is reversed, with directions to enter a judgment declaring the rights of the parties consistent with this opinion.

MILLIKEN, J., not sitting.

Judge MOREMEN with whom Chief Justice MONTGOMERY joins, dissenting.

KRS 278.040 states: "The jurisdiction of the commission (Public Service Commission) shall extend to all utilities in this state."

KRS 278.010(3) reads: " 'Utility' means any person, except a water district organized under Chapter 74 or a city, who owns, controls, operates or manages any facility used * * *."

The above statutes suggest strongly that neither cities nor water districts were under the jurisdiction of the commission, the rationale being that the citizens and voters of a city, or a water district, would have sufficient control over the management of either one.

In City of Olive Hill v. Public Service Commission, 305 Ky. 249, 203 S.W.2d 68, 70, the city of Olive Hill was furnishing electricity to approximately 800 customers, about half of whom resided outside the city limits. Upon complaint, and after a hearing, the commission entered an order holding that a city was without authority to distribute electricity outside its corporate limits, and ordered the city to discontinue so doing as soon as another utility constructed lines to serve those patrons. The question on appeal was whether the commission possessed authority to enter such an order. The court said:

"We agree with the City that the Commission's powers are purely statutory and are limited to the regulation of rates and service of utilities. KRS 278.040(2); Public Service Commission v. Blue Grass Natural Gas Co., 303 Ky. 310, 197 S.W.2d 765, and authorities therein cited. It follows that the Commission was without jurisdiction to determine that the City has no legal right or authority to supply patrons beyond the corporate limits and to order it to cease so doing. This is a question for a court of original jurisdiction and not the Commission; therefore, the Franklin Circuit Court erred in holding that the Commission possessed this authority."

The word "service" is defined by KRS 278.010, and does not include territorial disputes.

Strangely enough this opinion indicated that even though the commission had no jurisdiction over a city by the terms of the definition in the act, still when it went beyond its borders it was subject to the commission's supervision as to rates and services. The court said:

"As the Commission was without jurisdiction to order the City to cease this service, which was a question that could only be decided by a court of competent original jurisdiction, and as the Commission (so long as the City is not prevented by a court from operating beyond its boundaries) should have regulated the rates and compelled the

City to give adequate service to patrons residing without its limits rather than to have issued certificates of convenience and necessity to appellees, the judgment of the Franklin Circuit Court upholding the order of the Commission is hereby reversed, and the case is sent back to the commission for action in conformity with this opinion."

It will be noticed that although the court surrendered its judicial power to the commission so far as rates and services were concerned, it carefully retained the court's jurisdiction in territorial disputes and we believe this case, as did the Olive Hill case, involves a territorial dispute.

The majority opinion states: "While both cities and water districts are by KRS 278.010(2) expressly exempted from the definition of 'utilities', this statute uses the word 'person', and such public corporations are subject to its provisions." In other words, since subsection (2) of KRS 278.010 reads: " 'Person' includes natural persons, partnerships, corporations, and two or more persons having a joint or common interest," and cities and water districts are public corporations, they are subject to the provisions of the act. We have quoted at the beginning of this discussion the subsection which immediately follows wherein water districts and cities are expressly excluded and we cannot follow the logic that although they are excluded they are persons and persons are covered by the act, therefore the commission has jurisdiction of cities and water districts.

The next thing that is somewhat disturbing to us about the opinion is the fact that it ignores completely the territorial integrity which we believe the legislature intended a water district to have. KRS Chapter 74 seems to be deeply concerned with territorial and boundary limitations. Some of the pertinent statutes are: KRS 74.010 which sets out procedure for the creation of a water district and requires that the petition to the county court describe the territory intended to be included in it. It gives the county court power to strike off any part of the territory which will not be benefited. KRS 74.090 gives the power of condemnation. KRS 74.100 provides that whenever a water supply line or system is in operation in any water district, it may acquire the existing system. KRS 74.110 provides means by which the boundaries of the district may be enlarged or diminished. But the power to annex or strike off territory is lodged in the county court, not the public service commission.

The opinion in Board of Com'rs of Louisville Extension Water District v. Yunker, Ky., 239 S.W.2d 984, gives us the distinct impression that the court at that time was of opinion that the incorporation of a water district gave the district higher rights in that territory than anyone else. Under the majority opinion, it seems that a water district has no franchise or monopoly of value, that its creation is no more than a bare charter to do business, very much the same as a newly incorporated private business; that it has no preemptive rights in any territory. Under this decision two abutting cities could serve water within the territorial limits of the other city if the commisssion permitted it.

In conclusion, we are unable to reconcile the opinion just handed down in Warren Rural Electric Cooperative Corporation v. Electric Plant Board of the City of Bowling Green, Ky., 331 S.W.2d 117, with the majority opinion in the case at bar. It is true that KRS 96.880 excluded municipalities from supervision of the public service commission, in connection with their electric plants. We believe that KRS 278.010(3) does the same thing for water districts and cities.

The City of Olive Hill case has been cited and relied upon many times and we believe that if we are not going to follow it, that case should be overruled, and a new rule clearly stated.

For the foregoing reasons we respectfully dissent.