**CITY OF FLEMINGSBURG, Kentucky, Appellant,**

v.

**PUBLIC SERVICE COMMISSION of Kentucky and Western Fleming County Water District, Fleming County, Kentucky, Appellees.**

Court of Appeals of Kentucky.

Nov. 23, 1966.

Rehearing Denied March 24, 1967.

William T. Walton, Flemingsburg, John Hopkins, Hazelrigg & Cox, Frankfort, for appellant.

E. Gaines Davis, Jr., Smith, Reed, Yessin & Davis, Frankfort, Thomas R. Underwood, Jr., Lexington, for appellee Western Fleming County Water Dist., Fleming County, Ky.

Robert Matthews, Atty. Gen., J. Gardner Ashcraft, Asst. Atty. Gen., Frankfort, for Public Service Commission of Kentucky.

DAVIS, Commissioner.

The controversy here relates to whether water service shall be furnished to an area known as John Taylor Subdivision by the municipal water plant of Flemingsburg, or by the Western Fleming County Water District. The ruling of the Public Service Commission, affirmed in the circuit court, directs that the disputed area shall be served by the Western Fleming County Water District (hereinafter the District) to the exclusion of the municipal plant (hereinafter the City). The City has appealed.

For many years the City has operated a municipal water system. It has experienced critical water shortages on several occasions, and its officials treated with officials of the District with a view to the City's obtaining water from the District for its patrons. These negotiations were fruitless.

The District was formed in 1960 pursuant to KRS Chapter 74. By order of the Fleming County Court, entered in 1963, the area in dispute was included in the territory in the District's service area. At that time the Taylor Subdivision area was not within the corporate limits of Flemingsburg.

On February 13, 1964, the District made application to the Public Service Commission (hereinafter the Commission) for a certificate of public convenience and necessity permitting the construction of a water system sufficient to serve the area designated in the application, including the Taylor Subdivision. The City was not made party to that proceeding before the Commission, although much of the territory sought to be served lay within the territory contiguous to the City and potentially within its water service orbit as permitted by KRS 96.150. After a hearing on February 24, 1964, the Commission granted the District the requested certificate on April 23, 1964. The District sold revenue bonds, largely upon the strength of the Commission's order, looking toward enlargement of its system for servicing the certificated area. The line from which the District anticipated serving the Taylor Subdivision area was of "extra" capacity to accommodate the demand anticipated by future Taylor Subdivision residents. However no water line was laid in Taylor Subdivision by the District.

Meanwhile the City had been active. Annexation proceedings had been instituted, and on June 1, 1964, the disputed Taylor Subdivision area was formally annexed by Flemingsburg. At that time there was no water service or facility within the Taylor Subdivision area.

This development prompted the District to file its complaint on January 15, 1965, before the Commission, asserting that the City was preparing to render water service in the Taylor Subdivision area in derogation of the District's prior rights under its certificate. The City defended and insisted that it was ready, willing and able to serve the disputed area. As noted, the Commission ordered that the District be permitted to serve the area.

The City premises its appeal primarily upon Sections 163 and 164, Kentucky Constitution. For convenient reference we quote those constitutional sections:

163. "No street railway, gas, water, steam heating, telephone, or electric light company, within a city or town, shall be permitted or authorized to construct its tracks, lay its pipes or mains, or erect its poles, posts or other apparatus along, over, under or across the streets, alleys or public grounds of a city or town, without the consent of the

922

proper legislative bodies or boards of such city or town being first obtained; but when charters have been heretofore granted conferring such rights, and work has in good faith been begun thereunder, the provisions of this section shall not apply.

164. "No county, city, town, taxing district or other municipality shall be authorized or permitted to grant any franchise or privilege, or make any contract in reference thereto, for a term exceeding twenty years. Before granting such franchise or privilege for a term of years, such municipality shall first, after due advertisement, receive bids therefor publicly, and award the same to the highest and best bidder; but it shall have the right to reject any or all bids. This section shall not apply to a trunk railway."

The City relies upon Whitaker v. Louisville Transit Co., Ky., 274 S.W.2d 391. In Whitaker it was held that Blue Motors, holder of a certificate to serve the Camp Taylor area, must yield that right to Louisville Transit Company. The dispute was precipitated when the Camp Taylor area was annexed to Louisville, and the court determined that Louisville had the superior right to determine whether the intra-city bus service should be furnished by Blue Motors or Louisville Transit. The basis for that holding is to be gleaned from these pertinent excerpts from the opinion:

"We think the rights of the parties became fixed as a matter of law when the Camp Taylor area was annexed in June, 1950.

"[1] We look now to what we consider the applicable law. It seems to us the logical starting point is the Kentucky Constitution, sections 163 and 164. It is clear from these two sections that the framers of the Constitution intended to confer upon cities the final right to de-

cide whether a public utility may use or occupy the streets for an intra-city service. As already mentioned, this court so held in the People's Transit Co. case, [People's Transit Co. v. Louisville R. Co.], 220 Ky. 728, 295 S.W. 1055. * * *

"[2] Moreover, there can be no doubt that Transit's franchise covers not only the territory within the boundaries of the city at the time the franchise was let, but also such additional territory as may from time to time be annexed by the city. In Truesdale v. City of Newport, Ky., 90 S.W. 589, 590, it was said 'the limits of the city year by year determine the limits of the contract.'" Id., 274 S.W.2d at page 394.

While we recognize the fact that the Whitaker case dealt with a bus franchise as opposed to a water certificate, we are not persuaded that there is any difference in principle between the Whitaker case and the one at bar, despite efforts by appellees to distinguish them. For example, appellees urge that the constitutional provisions are inapplicable to the District because the latter is not a "water company" but a municipal corporation. The District is a body corporate having for its chief purpose the treatment, storage, sale and distribution of water. We think it is a "water company" within the meaning of the Constitution.

Another effort at distinguishing this case from Whitaker is equally as tortuous. It is suggested that since Section 163 of the Constitution provides that "No * * * water * * * company *within a city* * * *" shall be permitted to lay its pipes etc. without prior city consent it has no application to the District, because the District is out of town. We are not so persuaded. It would be anomalous if the Constitution afforded cities such "final right" as to entities physically headquartered within the city and left them with no

right as to those having operating bases beyond the city gates.

Appellees suggest that no constitutional right is at stake since the city's rights, if any, relating to the Taylor Subdivision arose only by annexation—a mere statutory function. Since the District's rights are also statutory it is reasoned that the Legislature intended that the pre-emptive rights accorded the District should supersede the rights any city might later acquire by statutory annexation. We regard the Whitaker decision as dispositive of this argument.

The present case does not present a situation similar to that presented in City of Cold Spring v. Campbell County Water District, Ky., 334 S.W.2d 269, in which we said that the Commission had the power to protect a water district from "ruinous competition" by a municipal system. The disputed service area in Cold Spring was not within the corporate limits of the city, by annexation or otherwise. Neither are we confronted with a situation in which the facilities of a competing utility were already installed when annexation to the city occurred; we do not pass upon what result would then obtain.

As regards the Legislative intent, it is not amiss to allude to KRS 74.120 (1) which provides:

"(1) All or any part of an incorporated city may be included in the boundaries of any existing water district or water district being newly organized, provided the governing body of such city by resolution or ordinance gives, or has given, its consent."

The quoted statute lends support to the idea that the Legislature recognized the constitutional inhibition against admission of a water district into a city without the consent of the city.

Appellees contend that despite this court's ruling in McClellan v. Louisville Water Company, Ky., 351 S.W.2d 197, a municipal water company must obtain a certificate from the Commission for new construction. City of Vanceburg v. Plummer, 275 Ky. 713, 122 S.W.2d 772 is cited in support of that point. KRS 278.020 is substantially the same as Section 3952–25, Carroll's Kentucky Statutes, 1936 Edition, construed in the Plummer case. It is our view that the decision in McClellan v. Louisville Water Company, Ky., 351 S.W.2d 197, overruled the Plummer case. It would be entirely inconsistent with the McClellan ruling to require a municipal water plant to obtain a certificate from the Commission. To the extent that City of Vanceburg v. Plummer, 275 Ky. 713, 122 S.W.2d 772, is inconsistent with the views expressed herein, it is overruled.

We are aware of the competing equities and matters of public policy here presented. For the appellees it is strongly urged that the integrity of the District's territory must be preserved in order to assure the marketability of its bonds. Of course the same argument can be advanced for the City. The simple answer seems to be that ample opportunity for protection is afforded each type of entity, and neither should proceed precipitately in projection of future expansions within areas possessing ripe annexation characteristics. The impelling need for cooperation suggests that appropriate steps be taken by cities and water districts looking toward a mutually advantageous resolution of their problems before either commits itself to a long-range program of financing and expansion involving the questionable area.

The judgment is reversed with directions to enter a new judgment consistent with this opinion.