Dissenting by
Justice ABRAMSON.
I respectfully dissent as to the appeal and would reinstate the cross-appeal, reverse the Court of Appeals on the subject matter of the cross-appeal and reinstate the judgment of the trial court.
I. The 1999 Ordinance Provides the Benefits Sought by Appellees.
When construing a statute or ordinance that is unambiguous on its face, our “duty to accord to [the] words ... their literal meaning unless to do so would lead to an absurd or wholly unreasonable conclusion.” Bailey v. Reeves, 662 S.W.2d 832, 834 (Ky.1984), citing Department of Revenue v. Greyhound Corp., 321 S.W.2d 60 (Ky.1959). Applying that fundamental principle to the facts of this case, the 1999 Ordinance provides the Appellees with the health insurance benefit they seek. That Ordinance states in relevant part:
(a)All members of the Policemen’s and Firefighters’ Retirement Fund of the Lexington-Fayette Urban County Government, operated pursuant to KRS 67A.360, et seq., who retired prior to July 1, 1999, shall be eligible to participate in a group health insurance plan (providing hospital and medical or health maintenance organization health care coverage) approved by the urban county council for such retirees (the “Plan”).
(b) The urban county government shall provide, on behalf of all members of the Policemen’s and Firefighters’ Retirement Fund who retired prior to July 1, 1999 and who were participants in the group health insurance plan coverage provided to urban county government employees and retirees prior to July 1, 1999, the following benefits: (1) for the period from July 1, 1999 through June 30, 2000, a sum equal to fifty percent (50%) of the urban county government’s contribution to the health insurance component of the benefit pool for current urban county government employees (the “contribution”); and (2) for the period from July 1, 2000 through June 30, 2001 and thereafter, a sum equal to the single premium for the plan coverage selected by the retiree, but not more than one hundred percent (100%) of the contribution.
(c) No benefits shall be available under this section to retired members of the Policemen’s and Firefighters’ Retirement Fund who were not, prior to July 1, 1999, participants in the group health insurance plan coverage provided to urban county government employees and retirees.
Thus, subsection (a) provides that all members of the Fund “who retired prior to July 1, 1999 shall be eligible to participate in a group health insurance plan” and subsection (b) provides that the Lexington-Fayette Urban County Government (LFUCG) shall provide a contribution benefit to members of the Fund “who retired prior to July 1, 1999 and who were participants in the group health insurance plan coverage.” Subsection (b) plainly and literally provides the designated contribution benefit to any member of the Fund who *36 participated in the group health insurance plan and retired prior to July 1,1999. The Appellees fit that description and thus are entitled, as the trial court and Court of Appeals properly concluded, to the contribution benefit provided in the 1999 Ordinance.
The majority departs from construction of the plain language of the ordinance to consider whether there is a latent ambiguity given the controversy currently before this Court and the language of subsection (c). Subsection (c), contrary to the majority’s suggestion, is not rendered “meaningless or ineffectual” if construed as Appel-lees contend it should be. That subsection simply provides that any retired member of the Fund who did not participate in the group health insurance coverage “prior to July 1, 1999” cannot participate in the coverage discussed in subsection (a) and cannot receive the contribution benefit being provided by LFUCG through subsection (b) of the 1999 Ordinance. Subsection (c) has clear meaning: any retired Fund member who did not participate in the group health insurance prior to July 1, 1999, most likely because he or she had obtained health insurance coverage elsewhere such as through a spouse, could not participate under the 1999 Ordinance. Stated differently, if a retired Fund member had never taken the group health insurance coverage he or she could not opt in now for the first time. While subsection (c) as the Court of Appeals stated, “does not impose any greater or lesser restrictions on eligibility for benefits than either Section 2(a) or 2(b)” it does serve to underscore who is not entitled to benefits.
With all of the three relevant subsections having clear and unambiguous meaning, it is wholly inappropriate to resort to construction of the ordinance by reference to the subsequent 2000 Ordinance when the LFUCG Council added new language that expressly limited the class of potential beneficiaries. As noted in City of Vanceburg v. Plummer, 275 Ky. 713, 122 S.W.2d 772, 776 (Ky.1938), where a statute or ordinance is unclear or ambiguous “resort may be had to the journals or to the legislative records showing the legislative history of the act in question in order to ascertain the intention of the Legislature, but this rule does not apply where the language of the statute is plain and unambiguous.” (emphasis supplied.) In short, the 1999 Ordinance is plain and unambiguous on its face and the trial court and Court of Appeals properly construed it as allowing the LFUCG-funded contribution benefit to the Appellees.
II. The 2000 Ordinance Precludes the Benefits Sought by Appellees and Withstands Their Equal Protection Challenge.
Because the majority, in my view, abandoned settled statutory construction precepts to find an ambiguity and then “rolled up” the analysis of the 1999 Ordinance with the 2000 Ordinance, they never reached the cross-appeal which is really a separate and distinct question, ie., what rights, if any, do the Appellees have under the 2000 Ordinance? Once again, we begin with the plain language of the ordinance which provides in relevant part:
(a) All members of the Policemen’s and Firefighters’ Retirement Fund of the Lexington-Fayette Urban County Government, operated pursuant to KRS 67A.360, et. seq., who retired prior to July 1, 1999, and who did not terminate their participation in the group health insurance plan provided by the urban county government before that date, shall continue to be eligible to participate in a group health insurance plan (providing hospital and medical or health maintenance organization health care *37 coverage) approved by the urban county council for such retirees (the “plan”).
(b) The urban county government shall provide, on behalf of all members of the Policemen’s and Firefighters’ Retirement Fund who retired prior to July 1, 1999 and who were participants in the group health insurance plan coverage provided to urban county government employees and retirees immediately pri- or to July 1, 1999, the following benefits: (1)for the period from July 1, 1999 through June 30, 2000, a sum equal to fifty percent (50%) of the urban county government’s contribution to the health insurance component of the benefit pool for current urban county government employees (the “contribution”); and (2) for the period from July 1, 2000 through June 30, 2001 and thereafter, a sum equal to the single premium for the plan coverage selected by the retiree, but not more than one hundred (100%) of the contribution.
(c) No benefits shall be available under this section to retired members of the Policemen’s and Firefighters’ Retirement Fund who were not, immediately prior to July 1, 1999, participants in the group health insurance plan coverage provided to urban county government employees and retirees.
(emphasis supplied). The preamble to this 2000 Ordinance states that, for the following three reasons, benefits are limited to only those retirees who had continued to participate in the group health care plan:
(1) to avoid creating an incentive and opportunity for persons to terminate their health care coverage during times of good health, and reinstate their health care coverage during times of high risk or poor health, to the detriment of other participants;
(2) to maintain the underwriting risk undertaken by the health care insurance plan at a more constant and predictable level by limiting the availability of coverage to those persons who have maintained it consistently since their retirement; and,
(3)to maintain the ability to provide an appropriate level of benefits for those persons who have maintained their participation at their own expense.
By this action of the LFUCG Council, the Appellees were clearly removed from the class of retirees eligible to participate in the health insurance plan coverage and to receive the LFUCG-funded contribution benefit accorded in subsection (b). The 2000 Ordinance applies only to retirees who had not terminated their participation in the group health insurance plan prior to July 1, 1999 or, as stated in subsection (b), who were participants “immediately prior to July 1, 1999.” (emphasis supplied.) It is undisputed that Appellees do not fit within this classification.
Although the Appellees are not entitled to coverage under the language of the 2000 Ordinance, they contend that the restrictive language of the newer ordinance violates their equal protection rights under the Kentucky and United States Constitutions. Citing Elk Horn Coal Corp. v. Cheyenne Res., Inc., 163 S.W.3d 408, 419 (Ky.2005), Appellees note that instead of applying the federal constitutional “rational basis” standard for legislative classifications, this Court has “construed our Constitution as requiring a ‘reasonable basis’ or a ‘substantial and justifiable reason’ for discriminatory legislation in areas of social and economic policy.” Indeed, this is the controlling standard under Kentucky law and, although one might question the fairness of according the generous benefit at issue here to some but not all of the firefighters and police officers who served the Lexington community prior to July 1,1999, the record is sufficient to establish a “rea *38 sonable basis” or “substantial and justifiable reason” for the classification.
The trial court, citing F.C.C. v. Beach Communications, Inc., 508 U.S. 307, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993), upheld the 2000 Ordinance stating “[a]s long as the legislative body has a legitimate interest — a rational basis — it may act in ways that treat members of the same class differently without violating equal protection mandates.” Although employing the federal standard, the trial court emphasized the Beach Communications holding that courts are not to judge the “wisdom, fairness and logic of the legislative choices” but rather to determine whether there is a rational basis for the challenged classification. The record reflects that the trial court reviewed the evidence regarding LFUCG Council’s rationale for classifying retirees based on whether they participated in the group health insurance plan immediately prior to July 1, 1999 and concluded that it was “rational,” for “cost and program efficiency purposes,” to limit the new LFUCG-funded benefit to those retirees who had remained with the group health insurance plan. Three specific reasons cited by LFUCG, and found by the trial court, were “(1) there is a logical connection between age and expected health care costs; (2) the potential for adverse selection which drives up overall costs;[1] and (3) the opt-out provision is commonly used among employers who offer retiree medical coverage.”[2]
Although it is true, as the Court of Appeals noted, that these same reasons existed prior to the enactment of the 1999 Ordinance and did not result in the same distinction being drawn between continuous plan participants and those who had opted out of the plan, that fact does not render the 2000 Ordinance unconstitutional. As the United States Supreme Court observed in United States Railroad Retirement Board v. Fritz, 449 U.S. 166, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980), a legislative body is free to rethink its prior classifications, and as long as there is a reasonable basis for its current line drawing, “the fact the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration.” Id. at 179, 101 S.Ct. 453.
There is substantial evidence of record that these three factors impacting costs were relied upon by members of the LFUCG Council in limiting the benefit to those retirees who had not terminated their group health insurance coverage. While Appellees through cross-examination were able to raise valid points of contention with these stated factors, none of the three was undermined. As this Court noted in Elk Horn Coal
In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against an equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.
163 S.W.3d at 413 citing, F.C.C. v. Beach Communications, Inc., supra. LFUCG has provided “a reasonably conceivable state of facts” that supplies a rational basis. As counsel for LFUCG succinctly argued to this Court, the underwriting costs *39 are dramatically affected if retired Fund members who have departed the group health insurance plan are readmitted and, moreover, the enhanced benefit intended for the smaller, finite group of retirees who stayed with the health insurance plan, if extended to that larger group, would be too great a financial burden for LFUCG to bear.
In sum, although Appellees challenge the reasons for the classification and insist that the reasons offered are unsupported to varying degrees by the evidence of record, there is in fact a rational basis under federal law and a reasonable basis under state law for what the LFUCG Council did in the 2000 Ordinance. Simply put, where retirees have stayed with and continued to support a group health insurance plan by paying the premiums themselves (and, yes, admittedly benefiting from the resulting coverage), if a legislative determination is made to assist retirees by defraying some of the costs of escalating premiums, it is not unreasonable to limit that assistance to retirees who have continued to rely on and support the government’s group health insurance plan after retirement as opposed to those who have opted to obtain coverage elsewhere. While the fairness of this distinction may seem questionable, especially when comparing two individuals who offered similar service to the Lexington community and one of them cannot receive the benefits which the 2000 Ordinance confers on his former colleague, this comparison is not the appropriate equal protection inquiry. Because there is a legally appropriate basis, whether deemed “rational” or “reasonable”, for the LFUCG distinguishing between those retirees who had voluntarily separated from the group health insurance plan and those who had continued to pay premiums and participate, there is no equal protection violation under either the Kentucky or the United States Constitutions.
For the foregoing reasons, I would affirm the Court of Appeals and the trial court as to the 1999 Ordinance and then reinstate the cross-appeal, reverse the Court of Appeals as to the 2000 Ordinance, and reinstate the judgment of the trial court.
CUNNINGHAM, J., joins.

. This "adverse selection” refers to the entry into the plan of new health plan participants with no prior coverage who typically have higher health care costs. This is identical to the first reason for the classification cited by the Council in the preamble quoted supra.

. The opt-out provision refers to the practice of not allowing retirees who have opted-out of coverage to return at a later date. This finding corresponds to paragraph (2) of the preamble quoted infra.