# Fleming-Mason Rural Electric Co-Operative Corporation v. City of Vanceburg.

Nov. 20, 1942.

J. M. McIntire, B. S. Grannis and Alfred S. Berg for appellant.

Edwin V. Holder for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Sometime prior to September 24, 1942 (the date not being shown), the city of Vanceburg, Lewis county, Kentucky, of the fifth class, acquired a municipal lighting plant for the benefit of the citizens of the city and which was located therein. About the same time or prior thereto it also acquired and became the owner of an electrically equipped line, with appurtenant rights, running from a point one-half mile outside of the corporate limits of the city to the town of Concord located near to or on the Ohio river, which served rural patrons along its course, as well as the town of Concord, with electric current and which was wholly independent of and disconnected with the plant of the city within its corporate limits, except perhaps it may have furnished current to that line from its plant located within the city, but, that fact is not shown in this record.

In acquiring its electrical holdings (including the rural line referred to) the city executed its bonds for the

132

required funds for such acquisitions, the trustee for the bond holders being the State Trust Company, of Maysville, Kentucky, and the amount of the unpaid bonds (some of which perhaps were due at the time of the transaction here involved) was $140,000. In that situation the city gave to appellant (the Fleming-Mason Rural Electric Cooperative Corporation), with its principal office located in Flemingsburg, Kentucky, an option to purchase the rural line referred to from the city at the agreed price of $21,500, conditioned, however, that the city could convey the line and transfer to the optionee a good title. The option was accepted by appellant on such terms. When the city offered to comply therewith appellant declined to accept the title tendered to it by the city upon the ground that the attempted sale was in violation of Section 96.540 of the authorized Kentucky Revised Statutes, since there had been no election whereby the citizens of the city consented to or approved the sale by the municipality such as is described in the section of the statutes referred to. Thereupon the city filed this declaratory judgment action in the Lewis circuit court against appellant to obtain a declaration as to its right to sell the involved electric line without an election such as the statute prescribes, and in its petition the above recited facts were incorporated.

The trustee of the bond holders was made a party to the action, since the property offered for sale by the city was in lien to secure the holders of the unpaid bonds of the city. The appellant, as the proposed vendee, answered, approving the facts alleged in the petition, but setting forth its doubt as to the right of the city to sell to it the property involved, without complying with the provisions of the section of the statutes, supra, i. e., by holding an election within the city resulting in a favorable approval of it and empowering the city to make it. It then asked that the controversial question be determined by the court. The trustee for the bond holders answered, in which it stated inter alia that ''the trustee will accept said sum and apply same as a part payment on said bond issue and release the lines sold from the lien securing said bond issue.'' The case was then submitted to the court for determination and it adjudged that the contemplated sale could be made by the city without submitting the question to the voters therein as is prescribed in the section of the statutes referred to.

The basis of the court's opinion, and corresponding judgment (from which this appeal is prosecuted), was upon the two grounds of, (1) that the city had no right to acquire title to and operate the electric line in question, since it was no part of the facilities of the municipal plant located within the city, and that the outside limits of its authority to contribute to the service of that line was the furnishing of the necessary current to the optioned line from its plant within the city and which, under numerous decisions of this court, must be taken from the municipal plant through facilities furnished by the owner, or operator, or consumer of the product as so furnished, following our holding in the case of Dyer v. City of Newport, 123 Ky. 203, 94 S. W. 25. That case has constantly been followed since the rendition of that opinion without qualification or questioning; and (2) that although the property offered for sale was located outside of and did not serve the city or its consumers, and that the city had the right to acquire it; yet it was not the character of sale contemplated by the section of the statutes supra, since by its terms the sale which must be approved by the voters within the city is one whereby the city proposes to ''sell, convey, lease or encumber the system or the income therefrom,'' none of which was proposed to be done by the city of Vanceburg in this case, since the transaction involved did not contemplate the sale of any part of the municipally owned plant. On the contrary, it involved only the transfer of property which it never had the right to acquire in the first place, and in effecting its sale it was only disposing of property which it had no right to operate and in the acquisition of which its action was ultra vires  As a result of such conclusions, the court rendered the judgment appealed from, and to have this court to pass upon it appellant (defendant below) prosecutes this appeal.

Independently of the domestic cases cited, supra, it would seem, in the light of the facts, that no other conclusion could have been reached by the trial court than the one embraced in its judgment. Moreover, the contemplated sale was one of only a small fractional part of the electric facilities of the city plant and, as we have seen, it was no part of the city system proper. The statute, supra, creating the possible controversy, does not by its terms embrace such small parts of municipally owned utilities. The language of the statute forbidding

such sale without a vote of the people of the city applies to the sales of entire plants, as we have said, and nowhere in it is the inhibitive phrase, "or no part thereto," nor does it contain the import of such words. To construe the statute as embracing the character of sale here involved (only a small fractional part of the plant) would forbid the city from selling—without an election authorizing it to do so—any machinery, poles, wire, or other equipment which it desired to supply with other new and improved equipment, unless the people had so authorized by authorizing the sale at an election held for the purpose.

In addition, however, to all of the foregoing, we, in the case of Massey v. City of Bowling Green, 206 Ky. 692, 268 S. W. 348, 349, decided in effect the question here involved, in support of the judgment appealed from. In that case the city owned its water works plant—also embraced by the section of the statute supra. It desired to acquire a site for the construction of a reservoir, and selected and purchased an area of fifteen acres within the corporate limits of the city for that purpose. The record in that case does not show whether the owner of the land purchased refused to sell any less quantity. The city constructed its reservoir on a portion of the area purchased, leaving a considerable portion of it not necessary for the purpose intended. It concluded to erect a city hospital on the overplus of land it had purchased. A taxpayer, through an action filed by him against the city, questioned its authority to permit or consent to the erection of the hospital, whereby the overplus of land would be taken by that institution, without an election of the voters of the city consenting to and authorizing it at an election to be held under the statute. The trial court dismissed the petition, which judgment we affirmed. In our opinion, after quoting the section of the statue supra, which plaintiff alleged had not been followed, we said:

"We do not think this ground tenable. From the record the only use the waterworks company has for the land is for its reservoir. As now constructed, the reservoir is amply sufficient in size; and, if the property in question is appropriated to the hospital, the remainder of the tract will be more than sufficient for an indefinite expansion of the waterworks system; hence it cannot be

impaired by an appropriation of this spot for the purposes indicated.''

That statement was an approval by this court of the right of municipalities to dispose of or devote to other uses surplus utility owned property (independently of its illegal acquirement) without obtaining authority from its voting inhabitants to do so. If it possesses such unconditional right in the disposition of utility property owned by it as a part of its utility plant holding, then, a fortiori would it be authorized, without such an election, to sell and dispose of property that it never had the right to acquire?

It is therefore clear that the judgment appealed from was and is correct, and it is affirmed.