**FARMERS RURAL ELECTRIC COOPERATIVE CORPORATION, Appellant,**

v.

**CITY OF GLASGOW, etc., Appellees.**

Court of Appeals of Kentucky.

March 31, 1967.

As Modified on Denial of Rehearing
June 16, 1967.

Carroll M. Redford, Jr., Redford & Redford, Glasgow, for appellant.

H. Jefferson Herbert, Jr., Wilson, Baker, Herbert & Garmon, Glasgow, for appellees.

HILL, Judge.

This is an appeal from a summary judgment for plaintiffs, now appellees, finding that the Electric Plant Board of the city of Glasgow (a third-class city) is "entitled" to furnish electric power to operate a water treatment and pumping station for the city to be located on the Barren Reservoir, ten miles from the city of Glasgow.

The Electric Plant Board of the city of Glasgow (hereafter referred to as EPB) was created by authority of KRS 96.550 to KRS 96.900. It purchases its power from the Tennessee Valley Authority under Title 16, U.S.C. sec. 831n–4.

Appellant, defendant in the trial court, purchases its electric power from East Kentucky Rural Electric Co-operative Corporation. It contends it has served the territory in which the water system is located for a quarter of a century.

The suit for declaratory judgment was filed on behalf of the city of Glasgow, Glasgow Water & Sewer Commission, and the Electric Plant Board seeking affirmative legal approval for the EPB to supply electric energy to the water plant, which was not under construction at the time suit was filed.

Appellant first contends the suit was not authorized by proper resolution or ordinance of the common council of the city. KRS 85.010 and 85.120 are cited in support of this contention.

The resolution provides:

" * * * (T)he Water and Sewer Commission is hereby authorized to take any and all steps necessary, for and on behalf of the commission and the City, to contract with and secure the electric power from the Electric Plant Board of the City of Glasgow for the operation of the water system located on Barren Reservoir."

█ It is concluded the resolution was sufficiently broad to authorize the suit. In fact, EPB had a right to maintain the suit without joining the city and its water and sewer commission. EPB is vested with broad powers, including the right to sue, under KRS 96.570. See Hatchett v. City of Glasgow, Ky., 340 S.W.2d 248 (1960).

Appellant's second point, that the complaint did not state a cause of action, is based on five grounds. We discuss them in the order presented.

█ In the first ground appellant presents its big gun, which is that under both KRS 96.010 and 96.188 and the " 'Little TVA Act,' KRS 96.550 to 96.900" appellant's territory is protected from invasion by a "municipality or board operating an electric plant." True KRS 96.890 provides that:

"No municipality or board operating an electric plant under the provisions of this Act [KRS 96.550 to 96.900] shall enter into *competition* with, or construct, maintain, or operate any facilities or service in *competition* with any rural electric cooperative corporation * * * in any territory being served by any such rural electric cooperative corporation." (Emphasis ours.)

The question revolves on the interpretation of "competition" as it is used in the statute.

The real question is whether or not the proposed extension of its lines to the water plant ten miles away from the city to serve its own facility amounts to "competition" with the services of appellant. It is not shown that the city intends to serve any customers along the line. In fact, it disavows any such intention. This situation, where its only act is failing to buy electric power from appellant, does not amount to the "competition" contemplated by the statute. It may, and often does, become necessary for cities to go great distances at enormous expense to supply city residents with water. Whether it is economically feasible is not for this court to decide. Whether the rate advantage with TVA over

that of appellant justifies the city fathers in building its own line to its facility is for them to decide.

Appellees are merely attempting to make available for their own use electric power previously contracted for with another. By so doing, they are not in competition with appellant.

Appellant cites Warren Rural Electric Cooperative Corporation v. Electric Plant Board of the City of Bowling Green, Ky., 331 S.W.2d 117 (1960), in support of its position. In Warren, the city was permitted to serve an area forming a peninsula into the territory of Rural at the expense of $10,000 to the city, while the service lines of Rural were nearer the territory in dispute. We cannot extract from the Warren case any rule or comment favorable to appellant.

Appellant's second ground supporting its "motion to dismiss the complaint and motion for summary judgment" is virtually the same as the first ground. Appellant anticipates appellees' argument that the city "proposes * * * to use its own electric energy to operate facilities also owned by it." (Quoted from the trial court's findings of fact and conclusions of law.) Appellant cites the same statute it cited in the first ground and Porto Rico Ry., Light & Power Co. v. Colom, 106 F.2d 345 (1 Cir., 1939). Like the Warren case, we find nothing in Porto Rico favorable to the position of appellant. On the contrary it is said in Porto Rico:

"Furnishing services to oneself does not constitute competition, as that term is generally accepted, and furnishing power as contemplated for the insular government and the municipal purposes, is in effect a case of the insular government supplying itself."

■ The third ground advanced by appellant is that to allow EPB to go "outside the area wherein TVA or its distributors were" operating on July 1, 1957, violates 16 U.S.C. section 831n–4, from which we quote:

"Unless otherwise specifically authorized by Act of Congress the Corporation (TVA) shall make no contracts for the sale or delivery of power which would have the effect of making the corporation or its distributors, directly or indirectly, a source of power supply outside the area for which the Corporation or its distributors were the primary source of power on July 1, 1957: *And such additional area extending not more than five miles around the periphery of such area as may be necessary to care for the growth of the corporation and its distributors within said area: * * *.*

\* \* \* \* \* \*

"Nothing in this subsection shall prevent the corporation, when economically feasible, * * * from continuing to supply power to * * * Glasgow." (Emphasis ours.)

The uncontradicted affidavit of Edwin Parrish establishes that the water station is "within five miles" of the area TVA was serving on July 1, 1957.

We conclude there was no violation of 16 U.S.C. section 831n–4.

For the fourth ground for relief appellant relies on a contract entered into in 1963 between it and the city "swapping" certain customers and establishing their areas of service. At that time, the city water plant was located outside and north of the city limits on Beaver Creek. Barren Reservoir was not in existence.

This contract pertained to "customers." It specifically authorized the city to serve its water plant located two miles outside the city. The purpose of the contract, as recited therein, was to "avoid wasteful duplication of facilities and uneconomic service *to ultimate consumers*" and to "establish clearly defined arrangements and procedures which will permit continued service to *their respective present consumers and*

*the future expansion of municipality's * * *."* (Emphasis ours.)

It is next insisted by appellant that the trial court "was premature in rendering summary judgment to appellees, without hearing evidence on the economic feasibility and the requirement of public convenience and necessity of the project." We think this is without merit.

Finally appellant charges that "no actual controversy existed upon which a declaration of rights could properly be given."

The city has plans for the water plant. It has adopted a proper resolution to initiate the project. Appellant has threatened to enjoin the construction of the plant. It appears to us that there exists "quite" a controversy justifying the declaration of the rights of the parties.

The judgment is affirmed.

WILLIAMS, C. J., and MILLIKEN, MONTGOMERY, P A L M O R E and STEINFELD, JJ., concur.