The CITY OF CORBIN, Kentucky, et al., Appellant,

v.

KENTUCKY UTILITIES COMPANY, Appellee.

The CITY OF CORBIN, Kentucky, et al., Appellants,

v.

PUBLIC SERVICE COMMISSION of Kentucky, et al., Appellees.

Court of Appeals of Kentucky.

June 27, 1969.

As Modified on Rehearing Nov. 13, 1969.

H. M. Sutton, Sam Cannon, Corbin, Joseph J. Leary, Frankfort, for appellants.

Richard F. Newell, Ogden, Robertson & Marshall, Louisville, William A. Hamm, Boyd F. Taylor, Hamm, Taylor & Milby, London, for Kentucky Utilities Co.

John B. Breckinridge, Atty. Gen., J. Gardner Ashcraft, Asst. Atty. Gen., Morris E. Burton, Frankfort, for Public Service Commission of Kentucky, and another.

CLAY, ˙ Commissioner.

We have before us consolidated appeals, both of which involve the question of whether appellant City of Corbin (a city of the third class) or appellee Kentucky Utilities Company has the legal right to furnish electric service to an industrial plant located outside the city. (These parties will hereinafter be designated respectively "City" and "KU".) In a suit filed in the Knox Circuit Court, KU's superior right to furnish this service was declared and the City was permanently enjoined from undertaking to furnish it. Simultaneously with filing the lawsuit, KU also initiated proceedings before the Public Service Commission seeking an order authorizing it to furnish this service. The Commission likewise ruled favorably to KU and that ruling was affirmed on appeal to the Franklin Circuit Court. The somewhat duplicative proceedings were initiated by KU because of apparent confusion in our Kentucky law concerning the jurisdictional authority to resolve this controversy.

For many years the City has owned and operated an electric distribution system. It does not have a plant which generates electricity but buys it wholesale from KU and retails it to consumers. In 1967 the City, acting under the Industrial Development law (KRS 103.200 et seq.), had completed plans for the acquisition of an industrial site about two miles north of the city limits and had sold revenue bonds for the purpose of constructing an industrial building thereon. Upon completion the building will be leased to American Greetings Corporation for 25 years, with an option to renew for an additional five years. The electric power service will be furnished direct to this corporation, will be used by it for manufacturing purposes and will be billed to and paid for by it. The plant will not be occupied or used by the City.

Since 1927 KU has served the area encompassing the plant site. It has adequate existing facilities for the additional service that will be required. The City has no facilities in this area. To provide service it would be required to spend $163,000 for the acquisition and installation of transmission equipment.

It is the City's first contention that as a general rule a city may go *outside* its corporate limits to acquire and use property for *legitimate municipal purposes*, citing Faulconer v. City of Danville, 313 Ky. 468, 232 S.W.2d 80; Bennett v. City of Mayfield, Ky., 323 S.W.2d 573; and Gregory v. City of Lewisport, Ky., 369 S.W.2d 133. No one would quarrel with this principle. But the City has failed to demonstrate wherein the retail selling of electricity to a private consumer some distance beyond the city limits serves a *municipal* purpose. Though the City does not make such an assertion, the subtle thrust of its argument is that the *making of a profit* by engaging in the business of retailing electricity beyond the municipal limits is such a purpose. While this enterprise might ultimately benefit its inhabitants, the profit objective in itself could not be characterized as a legitimate municipal purpose. If it were, there would be no limitation on the right of a city to engage in any kind of business anywhere.

At first glance, City of Henderson v. Young, 119 Ky. 224, 83 S.W. 583, would appear to recognize a broad right of a city to engage in business activity outside its limits. However, Dyer v. City of Newport, 123 Ky. 203, 94 S.W. 25, and Smith v. City of Raceland, 258 Ky. 671, 80 S.W.2d 827, severely restricted the scope of the decision in the Young case. In Dyer it was recognized that a city (under its general powers) could not engage in any kind of business "not incidental to its municipal capacity" or not "pertaining to the government of its inhabitants". This limitation was later recognized in Jefferson County Fiscal Court v. Jefferson County, 278 Ky. 785, 129 S.W.2d 554, 122 A.L.R. 1151, and Fleming-Mason R. Elec. Co-op. v. City of Vanceburg, 292 Ky. 130, 166 S.W.2d 269.

It is insisted on behalf of the City that in fact it proposes to furnish electricity *to itself*. If this were true, the controversy would end right here. The case of Farmers Rural Electric Coop. Corp. v. City of Glasgow, Ky., 415 S.W.2d 85, is relied on. In that case the City of Glasgow proposed to extend its own electrical facilities several miles beyond the city limits to furnish electric power *to its own water treatment and pumping station*. One of the questions raised was whether this enterprise constituted competition with REA in violation of KRS 96.890. We recognized the right of the city to service its own plant and held it was not in competition with REA.

To fall within the ruling of the Glasgow case, the City here is forced to and does argue that the new building is *its own* plant. True it fathered the project, but the purpose was to create a private industrial enterprise. The *business* on the site will not be *public* business, but *private* business. The furnishing of electricity would not be from the City to the City, but from the City to the American Greetings Corporation. The latter is in no sense an adjunct or agency of the municipality. The City can find no solace in the Glasgow case.

It is next contended that under KRS 58.010(1), (3) and 58.020 the City is authorized to furnish this service as a "public project". There is a very serious question whether the City could invoke this general statute to avoid the limitations which we will later discuss. Assuming for the purpose of argument that it does apply, we find that 58.010(1) refers to "public property for public purposes or suitable for * * * public welfare * * *". This really brings us back to the starting point of our discussion wherein we considered the public-purpose aspect of this proposed activity. As we have pointed out, the only purpose would be the making of a profit and we know of no authority which would dignify that objective, standing alone, as a public purpose. The City cites Chrisman v. Cumberland Coach Lines, Ky., 249 S.W.2d 782, wherein we held that the acquisition of a bus line (which would serve outside the city limits) was a public project.[1] The basis of the decision was that the intercity

1. This was a 4–to–3 decision.

and outside operations were closely and necessarily integrated, which of course we do not have in the present case. In construing the statutes above referred to, the following appears in the opinion (page 784 S.W.2d):

"However, the determining factors would seem to be the predominance of the public purpose, the close relationship to the public welfare, and the capacity of the city to conduct the enterprise within the scope of legitimate government."

Applying that test, we do not have here either a predominance of a public purpose or a close relationship to the public welfare in the context of municipal government. In the final analysis the proposed furnishing of electrical power to the outside customer is a new and independent operation unrelated to the furnishing of service within the City. It is not in the furtherance of a legitimate municipal purpose because not sufficiently keyed to the public welfare of the City's inhabitants.

We now reach the statute which really lies at the heart of this case and the one on which both parties rely.[2] KRS 96.520 (1) provides:

(1) Any city of the second, third, fourth, fifth or sixth class may purchase, establish, erect, maintain and operate electric light, heat and power plants, with extensions and necessary appurtenances thereto, *within or without the corporate limits of the city, for the purpose of supplying the city and its inhabitants with electric light, heat and power.*" (Emphasis added)

It is certainly arguable that this statute does no more than recognize the general power of cities to act in furtherance of a legitimate municipal purpose, which we have heretofore discussed. But assuming it is applicable and assuming that facilities for the transmission of electricity constitute a "plant", the statute prescribes the controlling objective of authorized activity in this field. It must be for the purpose of *supplying the city and its inhabitants* with electric light, heat and power. Under exceptional circumstances the supplying of those outside the city limits may be correlated with that purpose.

Miller v. City of Owensboro, Ky., 343 S.W.2d 398, recognized the authority of a city to construct and operate an electric generating plant outside its municipal boundaries, but the purpose was to serve the city and its inhabitants. It was also held in that case that the city could sell, outside its limits, the excess power produced. It must be noted that the excess power there involved was generated by the city's own plant and the excess capacity was created as a part of a sound plan to provide for the future needs of the city's consumers. In Warren Rural Elec. Coop. Corp. v. Electric Plant Bd., Ky., 331 S.W. 2d 117, we also recognized the right of a city to supply electricity beyond the city limits in an area which fell "naturally into its territory" and which would likely in the future be embraced by an extension of the city limits.

The factors recognized in the two foregoing cases were that the extension of service was closely integrated with the city's plant, and was closely related to the city's normal development. We do not think that the proposed extension in this case falls within that category. The City proposes a new and relatively independent operation in an area which is not adjacent to the city limits and which it has not heretofore served, in direct competition with another utility which has served the area for many years. The presence of adequate available service already in the area would tend to militate against a finding that a *municipal* purpose was being served by the extension. It is our conclusion that the judge of the Knox Circuit Court correctly decided that the City lacked either

2. The City does not claim the right to operate under the provisions of KRS 96.175 or 96.570 which authorize extensions beyond municipal boundaries.

general or specific authority to furnish the service in controversy.

From the foregoing discussion it is apparent that we consider the question here presented as one for judicial determination, particularly since it involves the interpretation of statutes granting power to municipalities. This brings us to the appeal from the judgment of the Franklin Circuit Court affirming the Public Service Commission's order directing KU to furnish service to the plant site in controversy, which in effect denied the City such right.

KU had proceeded before the Commission relying upon City of Cold Spring v. Campbell County Water Dist., Ky., 334 S.W.2d 269. That was a water case wherein we held that *courts* had jurisdiction to determine whether a municipality has the *general power* to serve a particular area, which we are reaffirming in this case. That opinion then went on to hold that, assuming the city had power to operate in a particular area, the Commission was authorized to determine which of two competing political subdivisions had the superior right to serve such area. Though that case has never been specifically overruled on the latter point,[3] some of the cases cited in the opinion were overruled in McClellan v. Louisville Water Company, Ky., 351 S.W.2d 197, and City of Flemingsburg v. Public Service Commission, Ky., 411 S.W.2d 920.

Since we have concluded the City lacked power to serve the area in controversy, the question of whether the Public Service Commission has jurisdiction over cities under KRS 278.020(1) (which relates to the construction of a new facility other than an ordinary extension of an existing system in the usual course of business) has become moot. It is therefore unnecessary to decide, and we do not decide, whether the City is a "person" under that statute, subject to limited Commission control.

■ To summarize our conclusions, the proceeding in the Knox Circuit Court was the proper one to determine, from the standpoint of municipal power, the right of the City to serve the disputed area. That court had jurisdiction to determine the City's legal authority to extend its facilities, and in determining that right could properly consider the nature of the proposed extension and the invasion of an area wherein there already existed a utility with adequate facilities to furnish the new service. The Chancellor's conclusion of law that the City lacked municipal power to build this extension was correct. His findings justified the Knox Circuit Court judgment. On the other hand, that judgment made moot the proceedings before the Public Service Commission, and solely for that reason the judgment of the Franklin Circuit Court must be reversed.

The judgment in case No. 3087, Knox Circuit Court, Kentucky Utilities Company v. The City of Corbin, Kentucky, et al., is affirmed, and the judgment in Civil Action No. 73422, Franklin Circuit Court, The City of Corbin, Kentucky, et al. v. Public Service Commission of Kentucky, is reversed.

MONTGOMERY, C. J., and MILLIKEN, PALMORE, REED and STEINFELD, JJ., concur.

HILL and OSBORNE, JJ., dissent.

---

3. The Cold Spring case was distinguished in Warren Rural Elec. Coop. Corp. v. Electric Plant Bd., Ky., 331 S.W.2d 117, and City of Flemingsburg v. Public Service Commission, Ky., 411 S.W.2d 920.