**GRAYSON RURAL ELECTRIC COR-PORATION; and East Kentucky Power Cooperative, Inc., Appellants,**

v.

**CITY OF VANCEBURG; Electric Plant Board of the City of Vanceburg; Kentucky Power Company, Appellees.**

No. 98–SC–000202–DG.

Supreme Court of Kentucky.

June 17, 1999.

As Modified on Denial of Rehearing Nov. 18, 1999.

Foster J. Collis, Dale W. Henley, Winchester, KY, W. Jeffrey Scott, Grayson, KY, for appellant.

E.V. Holder, Jr., Clayton G. Lykins, Jr., Vanceburg, for appellees City of Vanceburg and Electric Plant Board of the City of Vanceburg.

Bruce F. Clark, Elizabeth K. Broyles, Jason Patrick Thomas, Stites & Harbison, Frankfort, KY, for appellee Kentucky Power Company.

GRAVES, Justice.

This case involves the determination of the superior right between competing utilities to furnish retail electric service to new customers in an area now served by the Vanceburg Electric Plant Board (hereinafter "EPB"), but being in the territory assigned to Grayson Rural Electric Cooperative Corporation (hereinafter "Grayson") by the Kentucky Public Service Commission (hereinafter "KPSC"). Because the contested area once produced insufficient revenue to make the area competitively desirable, for years Grayson did not exer-

cise any of its rights to provide the retail electrical service. The environment and attention of the competing utilities changed substantially when a large industrial customer recently expressed an interest in locating a plant in the area. Even though the EPB and its predecessors had served smaller customers in Grayson's territory, it lacked the capacity to satisfy the requirements for a large industrial customer. Consequently, the EPB assigned its rights to Kentucky Power Company. When Kentucky Power Company sought approval of the assignment from the KPSC, Grayson intervened.

The EPB's predecessor (Vanceburg Utility Commission) then brought suit in Lewis Circuit Court seeking a declaratory judgment that it had the right to provide retail electrical service to the contested area and to the potential industrial customer. The circuit court entered judgment for the EPB. The Court of Appeals affirmed the judgment of the circuit court. After hearing oral arguments and having reviewed the record, we reverse the lower courts and remand to the circuit court for entry of a judgment consistent with this opinion.

A historical review of the parties' positions is helpful. In 1939, the City of Vanceburg created the Vanceburg Utility Commission (hereinafter "VUC") when it purchased a bankrupt electric company. The VUC was organized to provide electric service to the city of Vanceburg, as well as to all other residential, commercial and industrial customers located within a twenty mile strip of land along the Ohio River from Vanceburg in Lewis County to South Portsmouth in Greenup County, the location of the electric distribution plant. The VUC retailed electric energy which it purchased wholesale from the Kentucky Power Company. The VUC's 20–mile distribution line from Kentucky Power at South Portsmouth was described as a gigantic extension cord connecting rural customers to the line all the way to Vanceburg. Being a municipal utility, the VUC was exempt from regulation by the KPSC.

Grayson Rural Electric Cooperative is a retail supplier of electric energy which was organized in 1951 and which is regulated by the KPSC. For fifty-four years from 1939 to 1993, the VUC and Grayson honored an unwritten boundary and neither solicited the other's customers. Their "gentleman's agreement" was discarded in 1993, when a potential customer expressed interest in a 1400 acre industrial site located in the community of St. Paul, which lies within the 20–mile corridor being served by the then VUC. The VUC, lacking the capacity to satisfy the requirements of the potential customer's electric needs, entered into an agreement with Kentucky Power Company to supply the necessary power. When Kentucky Power Company sought KPSC's approval of the agreement to serve an industrial customer outside of its certified territory, Grayson objected. The KPSC allowed Grayson to intervene since the industrial site was within Grayson's certified territory on the KPSC maps. Kentucky Power Company then abated its KPSC application and joined with the City of Vanceburg and the VUC in filing an action for a declaration of rights in the Lewis Circuit Court.

Grayson moved for summary judgment on the grounds that the industrial tract was within its service area and the VUC was not permitted to resell purchased electricity outside its municipal boundaries. The City of Vanceburg then obtained a ten-month continuance during which time an ordinance was passed transforming the VUC into the current Electric Plant Board (EPB). Under KRS 96.570, an EPB is permitted to provide electric service "within and without the boundaries" of the municipality. The complaint for a declaratory judgment was amended to substitute the EPB for the VUC.

Ruling in favor of the City, the EPB and Kentucky Power, the trial court found, *inter alia*, (1) the KPSC lacked authority to regulate municipal utility corporations;

(2) the KPSC maps only showed boundaries between nonmunicipal retail electric suppliers such as Kentucky Power and Grayson; (3) Grayson had recognized the existence of the VUC boundary for a number of years as evidenced by a partial green line on the map of its certified service area; (4) Grayson's claim based on the KPSC map of certified areas was flawed because the KPSC lacked jurisdiction to resolve disputes involving municipalities; (5) KRS 96.550 to 96.900 gives the EPB the authority to provide service in the disputed area as long as it does not interfere with any other board, municipality or electric cooperative; and (6) the legislature intended for each utility to operate exclusively in its area and thus the EPB's right to operate in the disputed corridor was exclusive.

However in 1972, the legislature enacted Kentucky's Territorial Law which granted the right to the KPSC to establish geographical boundaries of certified areas within which its regulated utilities have the exclusive right and obligation to furnish retail electric service to all electric-consuming facilities. KRS 278.018. This legislation was designed to encourage an orderly development of retail electric service, and its constitutional validity was upheld in *City of Florence v. Owen Elec. Co-op., Ky.,* 832 S.W.2d 876 (1992) and *City of Nicholasville v. Blue Grass R. E. Coop. Corp.,* Ky., 514 S.W.2d 414 (1974). It "has a substantial relation to the public welfare, safety and health and, in a real degree, promotes these objectives." *City of Florence, supra,* at 882.

The Territorial Law was enacted to protect each KPSC-regulated utility in its certified territory against invasion or competition by another KPSC-regulated utility. The statute provides that no KPSC-regulated utility may, "furnish, make available, render or extend its retail electric service to a consumer for use in electric-consuming facilities located within the certified territory of another retail electric supplier." KRS 278.018(1).

Municipally-owned electric utilities are creatures of statute having only such authority as the Legislature grants to them. This principle was recognized in *City of Nicholasville, supra,* and affirmed in *City of Florence, supra.* Both opinions denied municipally-owned or municipally-franchised electric utilities an exclusive right to provide retail electric service to all utility customers within the city's boundaries. This Court has held that the Legislature determines the extent of authority which cities have to operate their own or franchised electric systems. That is, a municipally-owned or municipally-franchised electric utility has no exclusive service rights even within municipal boundaries in the absence of statutory authority. *City of Cold Spring v. Campbell Co. Water Dist.,* Ky., 334 S.W.2d 269 (1960) and *City of Corbin v. Ky. Utilities Co.,* Ky., 447 S.W.2d 356 (1969).

The VUC operated under KRS 96.520 for 56 years (1939–1995). The statute confers authority to own and operate the system only for purposes of supplying the city and its inhabitants with electric light, heat and power.

> Any city of the second, third, fourth, fifth or sixth class may purchase, establish, erect, maintain and operate electric light, heat and power plants with extensions and necessary appurtenances thereto, within or without the corporate limits of the city, for the purpose of supplying the city and its inhabitants with electric light, heat and power. KRS 96.520

The statute confers no authority to serve non-residents outside the city. Further, no cases have interpreted the statute so broadly as to authorize an exclusive service area outside the city.

During this litigation, the City of Vanceburg reconstituted its utility as an EPB which is authorized by KRS 96.550 to provide retail electric service to any user or consumer within or without the boundaries of a municipality. An EPB's rights are

not exclusive and the statute does not create or authorize an exclusive service area outside the city in which an EPB is free from competition regardless of its ability, willingness or obligation to serve customers within the area.

The statute allows an EPB to serve non-resident customers, but does not compel it. An EPB "may provide electric service to any user or consumer within and without the boundaries of any municipality...." KRS 96.570(2).

KRS 96.890 provides:

> No municipality or board operating an electric plant under the provision of KRS 96.550 to 96.900 shall enter into competition with, or construct, maintain, or operate, any facilities or service in competition with any rural electric cooperative corporation or electric plant operated by another municipality or board organized under the laws of this state in any territory being serviced by any such rural electric cooperative corporation or other municipality or board; but any municipality or board operating an electric plant under the provision of KRS 96.550 to 96.900 may enter into cooperative agreements with any such rural electric cooperative corporation or other municipality or board for a connection for cooperative service upon such terms and conditions as may be mutually agreed upon between any such municipality or board and any such rural electric cooperative corporation or other municipality or board. Such agreements may provide, but not by way of limitation, for exchange of electric service the cooperative use of transmission lines and other facilities, and the common use or exchange of other service or facilities.

The VUC acknowledged an inability to meet the electrical demands of the potential customer within the contested service area. Moreover, it lacks any statutory obligation to serve customers within this area should it choose not do so.

The Legislature has never chosen to authorize exclusive service rights or exclusive service areas for municipally-owned electric utilities. Should the Legislature intend for a city to have exclusive rights, it will so provide as it has for KPSC-regulated utilities in the Territorial Law.

For a municipally-owned utility to have the exclusive service rights or an exclusive service area over which there was no statutory or regulatory oversight enables it to assign those rights to third parties. There is no statutory authority for such assignments. Moreover, such assignments disrupt the Legislature's control over the retail distribution of electricity. The proposed assignment between the VUC and Kentucky Power Company was recognized by KPSC as an invasion of the certified territory of Grayson. The Court in *City of Cold Spring, supra*, rejected an exclusive service area claim stating that,

> Perhaps even more disastrously, this holding completely ignores the need for service of those residents within the Water District territory whom the Water District may be unable, or unwilling, to serve, and whom the Water District has no obligation to serve.

*Id.* at 272.

Similarly, in *Louisville Water Co. v. Public Service Com'n.*, Ky., 318 S.W.2d 537 (1958), our predecessor Court recognized that voting power gave residents of a city some means of protection against excessive rates or inadequate service of a utility owned by the city. *Id.* at 539. However, customers outside the city have no such protection. Moreover, rural consumers serviced by the EPB lack any recourse regarding rates charged or services extended or denied.

The EPB claimed that KRS 96.520 gave it authority to provide retail electric service to non-residents. However, *Miller v. City of Owensboro*, Ky., 343 S.W.2d 398 (1961), construed the statute to mean exactly what it says, that is, that a city is authorized to acquire and operate an electric plant only "for the purpose of supplying the city and its inhabitants" with elec-

tric energy. *Id.* at 401. At issue in *Miller* was the city's entitlement, under the statute, to build a generating plant having surplus capacity above or in excess of the immediate needs of the city and its inhabitants. The Court found that construction of the generating plant was not in violation of the statute since its primary purpose was to serve the needs of the city and its inhabitants and that it was "a matter of sound economic planning to provide initially for a surplus capacity rather than to add to the plant on a piecemeal basis as the needs from time to time arise; ..." *Id.* at 401. The Court recognized that the surplus "will gradually diminish and within fifteen years it is probable that the entire capacity will be needed for city consumers, ...." *Id.* The decision was further supported by well-established case law recognizing a city's right to sell the surplus production of city-owned utilities to nonresidents.

KRS 96.520 was construed in *City of Corbin, supra,* to prohibit the municipally-owned electric utility from constructing facilities and providing retail electric service to an industrial plant located about two miles outside the city. Corbin, like Vanceburg, had no power generation of its own, but acquired its power through wholesale purchases. In reaching the decision, our predecessor Court found that the proposed activity did not serve the purpose of supplying the city and its inhabitants with electric light, heat and power, and rejected the idea that the making of a profit by engaging in the business of retailing electricity beyond the municipal limits qualifies as a legitimate municipal purpose. *Id.* at 358–359. The Court distinguished its decision from *City of Owensboro, supra,* by pointing out that Owensboro was selling surplus generation, for a limited time, from its own generating plant as part of a sound plan to provide for the future needs of the city and the city's inhabitants. *Id.* at 359.

This Court has held that a municipally-owned utility might be permitted to extend its service outside the city to areas which fell naturally into its territory and which would likely in the future be embraced by an extension of the city limits. *Warren Rural Elec. Coop. Corp. v. Electric Plant Bd.,* Ky., 331 S.W.2d 117 (1960). No such claim is being made about the 20 mile corridor outside the City of Vanceburg.

The Lewis Circuit Court concluded that Vanceburg was authorized to provide retail electric service to nonresidents for the reason that the supplying of non-residents with electric power was correlated with serving the municipal customers. The circuit court's rationale was that,

> [T]he rural non-municipal customers paying their utility bills immediately became a vital source of revenue for VUC. Without this source of revenue, VUC would be unable to function in 1939 as well as today. Furthermore, from 1939 to present, the City of Vanceburg would be unable to financially run their municipal utility without the support of the additional rural customers which the city inherited when they obtained the utility company. Thus, the contested corridor served by VUC is correlated with the purpose of supplying the city and its inhabitants with electric power. The Court believes that all of these facts create the necessary set of circumstances to make it a valid exception to legitimatize the VUC's operation outside the municipal boundaries under KRS 96.520–540.

While it may be financially advantageous for Vanceburg and its EPB to service non-residents outside the city as a means of subsidizing the cost of providing retail electric service to the city and its residents, the statute and the cases construing it do not so provide. The EPB's operation is comparable to that proposed by the *City of Corbin, supra,* in buying electrical power wholesale and reselling at retail for purposes of making money from non-residents.

Vanceburg operates its municipally-owned electric utility as an EPB under KRS 96.550, and although it may provide

electric service to users or consumers outside the city (but not to a designated area), it is restricted from entering into competition with, or constructing, maintaining or operating any facilities or service in competition with any rural electric cooperative corporation such as Grayson.

No municipality or board operating an electric plant under the provision of KRS 96.550 to 96.900 shall enter into competition with, or construct, maintain, or operate, any facilities or service in competition with any rural electric cooperative corporation or electric plant operated by another municipality or board organized under the laws of this state in any territory being serviced by any such rural electric cooperative corporation.... KRS 96.890.

Any authority conferred upon Vanceburg's EPB by statute was not exercised before July 1, 1995, and by that date, Kentucky's Territorial Law had been in effect for over 20 years and Grayson was statutorily certified as the exclusive retail supplier for the entire territory which includes Vanceburg's claimed exclusive service area.

■ Grayson sought to protect its territory and claimed the entirety of the area when Vanceburg converted its electric operations to an EPB. KRS 96.550 does not confer transfer rights to or from a pre-existing municipal system, but expressly limits an EPB's authority to operate under its provision "from the time of the exercise of such election and the appointment of a board hereunder...." KRS 96.560(1). That occurred upon enactment of City of Vanceburg Ordinance 650.00 on July 1, 1995. The EPB came into existence with rights subordinate to those of Grayson to provide retail electric service in the entirety of its service area since the territorial certification to Grayson was pursuant to specific legislation which controls earlier, general legislation on the same subject. *Brown v. Hoblitzell*, Ky., 307 S.W.2d 739 (1957). That is, rights accorded to parties by statute become a part of the operative facts which govern their relationships.

*City of Nicholasville, supra,* and *City of Florence, supra,* hold the Legislature is entitled to establish the operating parameters of a municipally-owned electric system, and in the exercise of that power, the Legislature restricted the EPB from competing in territory served by Grayson. Grayson's certified territory includes the 20–mile so-called exclusive service area, and by statute Grayson is required to serve the entirety of this boundary as the exclusive supplier of retail electric service. After July 1, 1995, the EPB entered into competition with Grayson by serving customers in an area certified by state law to Grayson.

However, since Grayson chose not to compete for the existing non-municipal customers being served by EPB and its predecessor VUC, we find that Grayson has acquiesced in and is estopped from contesting Vanceburg's EPB's current service rights in the disputed area. Until Grayson and East Kentucky Power Company learned of the potential industrial customer, neither utility ever sought to serve the 20–mile corridor.

■ In *Hunts Branch Coal Co. v. Canada,* Ky., 599 S.W.2d 154, 155 (1980), this Court reaffirmed the principles of equitable estoppel:

One who knows or should know of a situation or a material fact is precluded from denying it or asserting the contrary where by his words or conduct he has misled or prejudiced another person or induced him to change his position.

Estoppel is established where another party relies in good faith on the representations made by the estopped party. *Electric & Water Plant Bd. v. Suburban Acres Development,* Ky., 513 S.W.2d 489, 491 (1974). An estoppel can be created by a party's words or by a party's conduct. *Hunts Branch Coal, supra,* at 155.

The trial court detailed the evidence establishing the VUC's continuous investment and service in the area which occurred without objection by Grayson. The

evidence demonstrated that Grayson has always been aware of Vanceburg's service to the customers in this area. Grayson and its wholesale power supplier, East Kentucky Power Company, worked closely with the VUC on the construction of a $140,000,000 hydroelectric plant to meet expected growth in industrial sites east of the city that Vanceburg was to serve. Throughout the project, including applications made to the Federal Power Commission, Grayson acknowledged that Vanceburg served the area lying between South Portsmouth and Vanceburg. In addition to the plant construction in the 1950's, 1980's, and as late as 1990, Vanceburg has made significant capital investments in facilities located in the disputed area to improve service to those customers as well as the city and its inhabitants. As a result of this reasonable reliance, Vanceburg changed its position to its detriment.

The decision of the Court of Appeals is reversed and this matter is remanded to the Lewis Circuit Court for entry of a judgment holding that Grayson is entitled to serve new customers within its certified territory in the contested area and the EPB is entitled to serve its existing customers in the contested area.

LAMBERT, C.J., COOPER, GRAVES, JOHNSTONE, KELLER, and STUMBO, J.J., concur.

WINTERSHEIMER, J., dissents in a separate opinion.

WINTERSHEIMER, Justice, dissenting.

I must respectfully dissent from the majority opinion because the Vanceburg Electric Plant Board has the exclusive right to serve its existing customers in the contested area as well as the absolute right to serve new customers in the area. I would affirm the Court of Appeals and the circuit court in their decisions.

KRS 96.520 and *City of Corbin v. Kentucky Utilities Company,* Ky., 447 S.W.2d 356 (1969), support the proper legal con-clusion that the Vanceburg Electric Plant Board has the authority to supply power to the disputed area. The statute provides in pertinent part as follows:

> Any city of the ... fourth ... class may purchase, establish, erect, maintain and operate electric light, heat and power plants with extensions and necessary appurtenances thereto, within or without the corporate limits of the city, for the purpose of supplying the city and its inhabitants with electric light, heat and power, and for such purpose, may enter into and fulfill the terms of an interconnection agreement with any utility....

KRS 96.520.

*City of Corbin, supra,* states that "under exceptional circumstances, the supplying of those outside the city limits may be correlated to" the primary purpose of supplying the city and its inhabitants with electricity. The trial judge correctly found that the facts existing in this case create the necessary circumstances to make it a valid exception so as to permit the Vanceburg utility entities to operate outside the municipal boundaries pursuant to KRS 96.520–540. I must fully agree with the Court of Appeals that the findings of the trial court were not clearly erroneous and should not be set aside.

The trial judge correctly found that as a matter of fact, the Grayson Rural Electric Corporation had no facilities or means to supply power to the contested area, and consequently, there was no competition. The trial judge further correctly held that the public service commission has no authority to regulate the service area of the Vanceburg Utilities Commission or the Vanceburg Electric Plant Board. This is not a case which involves a usurpation of the authority of the PSC. The conduct involved is clearly contemplated by the appropriate statutes.

This is a very fact-specific case, and under the unique circumstances presented here where one utility has served the same area for nearly sixty years with unchal-

lenged, uninterrupted service and given the knowledge, acquiescence and the assistance of the other utility there can be no basis to object at this time. Any decision that permits the existing provider of electric service to continue to provide that service does not promote any disorder or instability. The benefits that accrue to the Vanceburg Electric Plant Board are benefits that are clearly contemplated by the rural electric acts over more than seven decades. There are no far-reaching implications that in any way disturb the existing order of providing necessary electric service at affordable rates to all the consumers of the Commonwealth. Clearly, this decision avoids the wasteful duplication of distribution facilities sought to be promoted by KRS 278.016. Exclusive service areas are no more unstable when a municipality exercises that privilege than when an electric cooperative exercises it.

I must disagree with the majority on its interpretation of *City of Florence v. Owen Electric Cooperative, Inc.*, Ky., 832 S.W.2d 876 (1992). In that case, a utility had been granted a franchise by the city and the utility sought to have the right to serve an area that the city had recently annexed. The newly annexed area was located in the certified territory of another utility which had been providing service. This Court correctly held that the legislature has authority to limit the grant and operation of municipal franchises. The Court further held that because the area had been certified as the territory of the other utility under the territorial act, the other utility had exclusive right to serve.

In the *City of Nicholasville v. Blue Grass Rural Electric Cooperative Corp.*, Ky., 514 S.W.2d 414 (1974), the city was attempting to serve an area where it did not have facilities but where a cooperative did have facilities and was already providing service. This Court affirmed the ruling that under the relevant statute, KRS 96.538, the city could not compete with the cooperative.

In this case Vanceburg does not challenge the statutory prohibition of competition. In that respect, this case is clearly distinguishable from both *Florence, supra,* and *Nicholasville, supra,* because Vanceburg relies on the premise of the statutes that prohibit competition when it claims that it has the right to serve the disputed area free from other competition.

It is somewhat curious to note that since 1939 and until 1990, Vanceburg Electric Plant Board or its predecessor served only a small number of city residents and an equally small number of rural residents outside the municipal boundaries. In 1990, Vanceburg made a substantial investment in upgrading its facilities for the purpose of providing power to industrial customers located in Black Oak, an industrial site located three miles outside the city limits. The only customer in the St. Paul vicinity served by Grayson RECC is located outside the disputed area. Vanceburg has continuously relied upon their belief that the disputed area was being served exclusively by Vanceburg and this view was based on the acquiescence of Grayson RECC and East Kentucky Power as found by the trial judge. It was only in late 1993 that a prospective industrial customer expressed an interest in locating and purchasing a 1400–acre site in St. Paul owned by Kentucky Power Company since 1975.

Under all the circumstances of this case, Vanceburg and its allied power suppliers have an exclusive right to provide electric service in the disputed area. Such a result would not undermine the orderly distribution of retail electric service as required by Kentucky law.

I would affirm the decision of the circuit court and the Court of Appeals.